IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MURRAY DINES, d/b/a Terpene Distribution, | ) ) ) |
| Plaintiff, | ) ) |
| Vs. | ) ) |
| LAURA KELLY, in her official capacity as Governor of the State of Kansas, | ) ) ) |
| and, | ) ) |
| DEREK SCHMIDT, in his official capacity as Attorney General of the State of Kansas, | ) ) ) |
| Defendants. | ) |

Case No.:

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Murray Dines d/b/a Terpene Distribution, for his Complaint for Injunctive and Declaratory Relief against Defendants Governor Laura Kelly, in her official capacity as Governor of the State of Kansas, and Attorney General Derek Schmidt, in his official capacity as Attorney General of the State of Kansas, (collectively referred to herein as "Defendants") states the following:

### I. Introduction

1. This is a lawsuit challenging the application of a definition of "hemp" or "industrial hemp" that impermissibly narrows the definition of "hemp" and "hemp products" under federal law.

2. This lawsuit also challenges efforts to prosecute, or threaten criminal prosecution, for possession and sale of hemp derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers that are legal under federal law and should be legal under state law.

3. This lawsuit also challenges Kansas' law enforcement authority to conduct raids and seize property, and to enact prosecution policies that are contrary to Kansas and federal laws.

4. Plaintiff sells or sold hemp products which are hemp derivatives, extracts, cannabinoids, isomers, acids, salts, or salts of isomers of hemp. All hemp and hemp derivatives, as referenced in this Complaint, contain no more than 0.3% Delta-9-tetrahydrocannabinol concentration on a dry weight basis.

5. Plaintiff does not produce or cultivate hemp in Kansas. All the hemp products that Plaintiff sells are purchased from suppliers in Colorado, and then transported to Kansas.

6. Every hemp product Plaintiff sells or sold containing delta-8 THC is produced in compliance with federal law and the laws of the state in which the hemp was produced.

7. In sum, Defendants' actions violate the federal laws defining and regulating hemp. Plaintiff respectfully requests that this court find that federal law preempts the state laws on hemp, and that Defendants be ordered to recognize and apply only the federal definition of "hemp" to both state and federal laws, and to find Kansas statute's definition of "hemp products" to be inapplicable, void, or otherwise unenforceable.

**II.     Jurisdiction and Venue**

8. All the foregoing paragraphs are incorporated by reference.

9. This Court has jurisdiction over this case pursuant to 28 U.S.C.A. §§ 1331 and 1343.

10. Venue is proper pursuant to 28 U.S.C.A. § 1391.

11. Declaratory relief is authorized pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. §§ 2201 and 2202.

12. This action is brought pursuant to 42 U.S.C.A. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

### III.     Parties

13. Plaintiff Murray Dines, d/b/a Terpene Distribution (a/k/a Guardian MMJ, or the Guardian Cannabis THC Recreational Dispensary) sells hemp and hemp products to buyers in Kansas. Some of the products contain Delta-8 tetrahydrocannabinol. Plaintiff is a resident of Kansas.

14. Plaintiff's retail location is currently located in Lawrence, Douglas County, Kansas (in operation as of June 22, 2022), but at the time of the raid referenced herein, Plaintiff's retail location was in Topeka, Shawnee County, Kansas.

15. The Defendants named herein are named only in their official capacities and as State officials responsible for the implementation and enforcement of Kansas laws.

16. Defendant Governor Laura Kelly is charged with the executive authority of the state government for the State of Kansas, including the administration and enforcement of the laws of the State of Kansas. Governor Kelly is sued solely in her official capacity due to her role as the chief executive overseeing law enforcement. *See* Kan. Const. Art. I, § 3.

17. Defendant Derek Schmidt is the Attorney General for the State of Kansas and as such, oversees the enforcement of the laws of the State of Kansas. Attorney General Schmidt is sued solely in his official capacity due to his role as the Attorney General. *See* K.S.A. 75-702.

18. Defendant Suzanne Valdez is the District Attorney for Douglas County, Kansas and as such is responsible for appearing in Douglas Count to prosecute, on behalf of the people of her district, all matters arising under the laws of this state. District Attorney Valdez is sued only in her official capacity due to her role as District Attorney. *See* K.S.A. 22a-104

IV. **Background and Factual Allegations**

A. **Delta-8 and the Cannabis Sativa L Plant**

19. The Cannabis sativa L plant is an easily cultivated plant that is sometimes commonly referred to as hemp or marijuana, depending on the cultivation method.

20. The Cannabis sativa L plant produces at least 113 cannabinoids, one of which is called tetrahydrocannabinol ("THC").

21. There are multiple isomeric forms of THC including, but not limited to, delta-8 THC, and delta-9 THC.

22. Delta-9 THC is the primary cannabinoid isomer that causes a psychoactive reaction in humans when it is consumed at certain concentrations and at certain levels.

23. Delta-8 THC is a naturally occurring cannabinoid isomer in the Cannabis sativa L. plant.

24. While marijuana and hemp are both varieties of the Cannabis sativa L. plant, they are distinct plants.

25. Hemp differs from marijuana by virtue of the fact it is a variety of the plant produced with a low concentration of *delta-9* THC.

i. **Federal Regulation of Hemp**

26. Until recently, growth and cultivation of hemp was prohibited in the United States.

27. Since 2014, the federal government has passed two farm bills that allows states and Indian tribes to grow and regulate hemp within state or tribal borders.

28. In 2014, President Barack Obama signed into law the Agricultural Act of 2014 ("the 2014 Act") which defined "industrial hemp" as the plant "Cannabis sativa L. and any part of such plant,

4

whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. § 5940(a)(2).

29.  But in 2018, hemp was fully legalized as an agricultural commodity and the definition of "hemp" was broadened.

30. On December 20, 2018, then President Donald Trump signed into law a new farm bill - the Agriculture Improvement Act of 2018 ("the 2018 Act") – which repealed and replaced the 2014 Act.

31. Though the 2014 Act had already made hemp "and any part of such plant, whether growing or not" legal, the 2018 Act broadly clarified the definition of "hemp" to be:

> "The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and **all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers**, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C.A. § 1639o(1) (emphasis added).

32. Thus, the 2018 Act includes all products derived from hemp to be legal – including hemp products with a delta-8 THC concentration of any amount - so long as the *delta-9* THC concentration is not more than 0.3%.

33. Importantly, according to legislative history, to accomplish its goals of allowing states to grow hemp, create a regulatory scheme, while also allowing hemp to be sold in interstate commerce, Congress intended for the 2018 Act to preclude a state from adopting a more restrictive definition of hemp. The Conference Report for the 2018 Act states that "states and Tribal governments are authorized to put more restrictive parameters on the production of hemp **but are not authorized to alter the definition of hemp** . . .".  Excerpt from Conference Report attached as Exhibit 1, p. 737 (emphasis added) (cited portions highlighted).

34. Significantly, the 2018 Act also explicitly preempts state laws that restrict the transportation or shipment of hemp, while also insuring the free flow of hemp and hemp products through interstate commerce. The editor's and revisor's official note to 7 U.S.C.A. § 1639o states:

> (a) **Rule of construction.** Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp or hemp products.
>
> (b) **Transportation of hemp and hemp products.** No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 through the State or the territory of the Indian Tribe, as applicable." (Emphasis in original.)

*See* Editor's and Revisors official note to 7 U.S.C.A. § 1639o.

35. Based on the text of 2018 Act, Congress intended to allow a state or Indian tribe to regulate the *production*[1] of hemp within state or tribal borders, with an intent to encourage states to allow farmers to grow hemp as an agricultural commodity, affirming those principles by clarifying hemp includes all derivatives, extracts, cannabinoids, isomers and salts, preventing states from altering the definition of hemp, and preempting any state or Indian tribe from passing laws that impede the transport of hemp. *See* 7 U.S.C.A. § 1639p(a).

36. The 2018 Act also removes hemp from the federal Controlled Substances Act ("CSA") by amending the CSA in at least two ways: (1) the CSA definition of marijuana (spelled "marihuana") was changed so that it excludes hemp; and (2) all tetrahydrocannabinols found in hemp are no longer considered "tetrahydrocannabinols" under the CSA. The CSA now reads

---

[1] In the context of the laws at issue in this case, the "production of hemp" means to grow or cultivate hemp. Black's Law Dictionary defines "production" as: "The act or process of making or growing things, esp. those to be sold. . . ." PRODUCTION, Black's Law Dictionary (11th ed. 2019)

6

"tetrahydrocannabinols, except for tetrahydrocannabinols in hemp (as defined under section 1639o of Title 7)". *See* 21 U.S.C.A. § 812(c)(17).

### ii. Any Concentration of Delta-8 THC Derived from Hemp is a Legal Hemp Product

37. The 2018 Act: (1) set forth a definition of "hemp" to include all parts of the Cannabis sativa L. plant, including all seeds, all derivatives, all extracts, all cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, provided it contains a *delta-9*-THC concentration of no more than 0.3%; (2) does not allow states to alter the federal definition of hemp; (3) mandates that no state or Indian tribe can prohibit the interstate transportation of hemp or hemp products; (4) encourages the interstate commerce of hemp, (5) removes hemp from the definition of tetrahydrocannabinols in the CSA; and (6) allows states to regulate the production of hemp on its land.

38. Therefore, any downstream product made from hemp, any hemp derivative, cannabinoid, isomer, acid, salts or salts, that has a *delta-8* THC concentration of any amount, is a legal product derived from hemp[2].

**B. Kansas Hemp Regulation**

39. Kansas allows hemp production on its land within state or tribal borders.

40. Kansas regulates hemp production via the Kansas Commercial Industrial Hemp Act ("Kansas Hemp Act"). *See* K.S.A. 2-3901 *et seq*.

---

[2] While delta-8 THC occurs naturally in hemp, delta-8 hemp products are typically made from hemp-derived cannabidiol.

41. The Kansas Hemp Act specifically states that it should be implemented in the least restrictive manner under federal law, "[i]t is the intent of the legislature of the state of Kansas that the implementation of the commercial industrial hemp act by the Kansas Department of Agriculture **shall be conducted in the least restrictive manner allowed under federal law**." K.S.A. 2-3905(a) (emphasis added.)

42. Despite the clear congressional directive that a state cannot alter the definition of "hemp," and the Kansas Hemp Act's requirement to conduct the law in the least restrictive manner allowed under federal law, Kansas law enforcement officials, including Defendants, apply the Kansas statute's different definition of "industrial hemp" as an excuse to criminalize hemp products with more than 0.3% delta-8 THC under state law by defining "hemp" and "hemp products" in a more restrictive manner than is allowed under federal law.

43. Specifically, Kansas statute provides a definition for "industrial hemp" rather than "hemp" which, unlike the definition of hemp under federal law, limits the definition of hemp to the plant itself: ". . . all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis." *See* K.S.A. 2-3901(b)(7).

44. Still, Kansas statute has excluded hemp and hemp products from the Kansas Uniform Controlled Substances Act ("Kansas CSA"). The Kansas CSA defines "tetrahydrocannabinols" as: "tetrahydrocannabinols naturally contained in a plant of the genus Cannabis . . . and their isomers with similar chemical structure . . . **except tetrahydrocannabinols in any of the following**:

(A) Industrial hemp, as defined in K.S.A. 2-3901, and amendments thereto;
…

    (B)    hemp products, as defined in K.S.A. 2-3901, and amendments thereto, unless otherwise deemed unlawful pursuant to K.S.A. 2-3908, and amendments thereto." (Emphasis added).

45. Kansas statute defines "hemp products," to include any derivative of hemp, stating, in part: "all products made from industrial hemp including, but not limited to, cloth, cordage, fiber, food, fuel, paint, paper, particleboard, plastics, seed, seed meal and seed oil for consumption and any extract from industrial hemp intended for further processing." K.S.A. 2-3908(a)(1).

46. The same statute also includes permissive language regarding THC in hemp products stating: "Final 'hemp products' *may* contain a tetrahydrocannabinol concentration of not more than 0.3%. As used in this paragraph, "tetrahydrocannabinol concentration" means the same as in K.S.A. 65-6235(b)(3) and amendments thereto." *Id*. (emphasis added).

47. The Kansas Hemp Law identifies several products it considers to be unlawful hemp products, but, more importantly, the same statute says, "**nothing in this section shall prohibit . . . the production, use or sale of any hemp product that is otherwise not prohibited by state or federal law.**" *See* K.S.A. 2-3908(d) (emphasis added).

48. In December of 2021, Defendant Schmidt (Kansas Attorney General Derek Schmidt) issued an opinion letter to Kansas Bureau of Investigation Director Kirk D. Thompson that argues, generally, that based on the Kansas statute that defines "industrial hemp" and "hemp products," which references THC concentrations without identifying a specific delta, hemp products with more than 0.3% of any type of THC falls under the schedule I of the Kansas CSA. *See* Kan. Att'y Gen. Op. No. 2021-4 (Dec. 2, 2021) ("AG's Opinion").

49. The AG's Opinion is faulty for several reasons, including:

9

    a. AG's Opinion fails to acknowledge that the federal 2018 Act prohibits a state from altering the definition of hemp.  As a result, the AG's Opinion does not apply the actual definition of hemp to its analysis of state law.

    b. The AG's Opinion does not mention that the Kansas statute states the implementation of the Kansas Hemp Act "shall be conducted in the least restrictive manner allowed under *federal law*" and is silent as to whether its interpretation is consistent with the implementation of the Kansas Hemp Act in a manner that is the least restrictive manner under *federal law*.

    c. The AG's Opinion also omits the fact that K.S.A. 2-3908(d), referencing illegal hemp products states that "nothing in this section shall prohibit . . . the production, use or sale of any hemp product that is otherwise not prohibited by state or federal law."  Thus, if the hemp product is not prohibited under federal law, the state law does not prohibit the hemp products production, use or sale under Kansas law.

50. The AG's Opinion admits its omission of a substantive discussion of federal law is purposeful, stating that, other than a discussion of whether foods that contain THC or CBD are regulated under the federal Food and Drug Cosmetic Act, "other excursions into federal law is beyond your question and beyond the scope of this opinion, but participants in the cannabis-derived products industry would do well to become informed on relevant federal law."

51. Likewise, the AG's opinion also fails to examine federal preemption issues resulting from the 2018 Act, especially those preemption issues dealing with interstate travel and interstate commerce[3].

52. The AG's Opinion has been used by some law enforcement officials, including Defendant Schmidt and Douglas County, Kansas District Attorney Suzanne Defendant Valdez, as justification to threaten or to pursue prosecution of possession of hemp products with a delta-8 THC level of more than 0.3% as THC as a schedule I substance pursuant to the Kansas CSA.

53. On June 14, 2022, Douglas County, Kansas District Attorney Suzanne Valdez announced she plans to prosecute the distribution and sale of Delta 8 products, citing the AG's Opinion as legal authority.

54. Other district attorneys have issued similar threats. For example, on February 22, 2022, Johnson County District Attorney Steve Howe released a statement stating that his office will prosecute sellers of hemp products with more than 0.3% of *any* type of THC isomer, including products with more than 0.3% of the delta-8 THC, relying on the AG's opinion as authority.

55. Due to the fact a state cannot alter the definition of hemp, the definition of "hemp" that Defendants should be required to recognize and apply throughout Kansas is the definition found at 7 U.S.C.A. § 1639o(1), which is:

> "The term "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

---

[3] However, the AG's Opinion recognizes, in a footnote, that "products originating from outside of Kansas are subject to federal law . . .".

56. If the definition of hemp in Kansas is the same as the definition of hemp under federal law, any products made from hemp that Plaintiff sells would fall under the definition of "hemp" as a downstream hemp derivative and would thus not be an outlawed hemp product or schedule I substance under the Kansas CSA, including any hemp products with a delta-8 THC concentration of any amount.

57. If Defendants are allowed to apply Kansas law in a manner that criminalizes hemp products that are legal under federal law, the application of Kansas law in this manner would plainly violate the 2018 Act's express preemption of transport of hemp through a state.

**C. The Raid on Plaintiff's Business on 4-20**

58. Shawnee County, Kansas, and the City of Topeka used the AG's Opinion to justify raids and seizure private property from hemp sellers, including Plaintiff.

59. Specifically, on April 20, 2022, members of the Topeka Police Department narcotics unit and Shawnee County Drug Task Force executed two search warrants at Plaintiff's store located at 3124 SW 29th Street, Unit 7, Unit 8, and Unit 10, in Topeka, Kansas.

60. The warrant affidavits executed by Officer M. Hendricks, #372, of the Topeka Police Department, claim that prior to the raid, one of Plaintiff's products was obtained through an undercover sale was sent to the Kansas Bureau of Investigation ("KBI") lab for testing.

61. Officer Hendricks's affidavit claims that the KBI lab report concluded that "tetrahydrocannabinol (THC) was detected . . ." without identifying the specific type or isomer(s) of THC, and without identifying the percentage concentration of THC that was detected by the KBI lab.

62. Upon execution of the warrant at Plaintiff's business, Topeka Police Officers damaged property and seized over $120,000.00 worth of property, including cash, containers, general supplies, hemp, hemp derivatives, and hemp products from Plaintiff.

63. After the raid, on April 28, 2022, the Shawnee County Sheriff issued a news release claiming that the products offered for sale at Plaintiff's store, referred to as "Delta-8 THC . . . products," had been "determined to be unlawful schedule I drugs," despite there being no such determination under any state or federal law, or any state or federal court, citing only the AG's Opinion as authority.

64. The products seized from Plaintiff are all derived from hemp, and none contain a delta-9 concentration of more than 0.3%.

## COUNT I
## FEDERAL PREEMPTION - VIOLATION OF THE AGRICULTURE ACT OF 2018

65. All of the foregoing paragraphs are incorporated by reference.

66. The Agriculture Act of 2018, at 7 U.S.C.A. § 1639o(1), defines "hemp" as the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

67. Defendants violate 7 U.S.C.A. § 1639o(1) by applying Kansas law in a manner that criminalizes derivatives, extracts, cannabinoids, isomers, acids, sales and salts of isomers of hemp in direct contradiction of 7 U.S.C.A. § 1639o of the Agriculture Act of 2018, and the Commerce Clause. U.S. Const. Art. I, § 8, cl. 3.

68. The 2018 Act expressly preempts a state from restricting the transportation of hemp through states.

69. Kansas law alters the definition of hemp by defining "industrial hemp" in a manner that limits hemp to the plant itself at K.S.A. 2-3901(b)(7) defining hemp as ". . . all parts and varieties of the plant cannabis sativa L., whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than 0.3% on a dry weight basis."  This limited definition of hemp was subsequently used as an excuse for one or more Defendants in this case to apply the law in a manner that criminalizes items that would be otherwise considered legal hemp products if Kansas utilized the correct definition of hemp.

70. Federal law preempts any portion of Kansas law, including the Kansas Hemp Act or Kansas CSA, pursuant to the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

71. Plaintiff has been and will be harmed by Defendants because Defendants are restricting Plaintiff from transporting, possessing, or selling hemp derivatives.

72. In addition, due to Defendants' failure or refusal to recognize the federal definition of hemp, it is physically impossible to comply with both the state and federal law.

73. Moreover, state law cannot be enforced without impairing the federal superintendence of the field of the transportation of hemp, and congresses definition of "hemp" for regulatory reasons.

74. An actual controversy exists between Plaintiff and Defendants regarding the constitutionality of certain state statutes.

## COUNT II
## INJUNCTIVE RELIEF

75. All of the foregoing paragraphs are incorporated by reference.

76. Plaintiff is likely to succeed on the merits of his challenge of the constitutionality of the Kansas Hemp Act as applied by Defendants because the state definition of "industrial hemp" plainly conflicts with the federal definition of "hemp" set forth in the Agriculture Improvement Act of 2018.

77. The Kansas Hemp Law and Kansas CSA, in the manner applied by Defendants have, and will continue to, cause harm to Plaintiff.

78. Plaintiff has no adequate remedy at law and faces irreparable harm unless the Court enjoins Defendants from utilizing a definition of hemp or hemp products that conflicts with the 2018 Act, and the balance of the harms weighs in favor of Plaintiffs.

79. An injunction is also in the public's interest, as the state of Kansas is not permitted to ignore federal law or criminalize conduct that is legal under federal law.

80. Plaintiff is entitled to a preliminary injunction, later to be made permanent, with respect to hemp products Plaintiff sells that are a derivative of hemp (or cannabinoid, isomer, acid, salts, and salts of isomers of hemp).

## COUNT III
## DECLARATORY JUDGMENT

81. All of the foregoing paragraphs are incorporated by reference.

82. An actual controversy exists between Plaintiff and Defendants regarding the constitutionality of the application of the Kansas Hemp Act and Kansas CSA.

83. Pursuant to 28 U.S.C.A. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiff requests that this Court declare portions of the Kansas Hemp Act and Kansas CSA are preempted by federal law and violate the United States Constitution, and to declare the federal definition of hemp found at 7 U.S.C.A. § 1639o(1) to be the definition of hemp for purposes of the application of Kansas laws, and to declare the Kansas definition of "hemp products" to be void pursuant to both Kansas and federal law.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Set this matter for a prompt hearing on Plaintiff's request for preliminary injunctive relief;

B. Enter judgment in Plaintiff's favor and against Defendants;

C. Declare portions of the Kansas Hemp Act and Kansas CSA are preempted by federal law in the state of Kansas, and violate the United States Constitution, and to declare the federal definition of hemp found at 7 U.S.C.A. § 1639o(1) to be the definition of hemp for purposes of the application of Kansas laws, including for the purpose of excluding hemp from the Kansas CSA, and to declare the Kansas Hemp Act's definition of "hemp products" to be void or otherwise not enforceable;

D. Issue a preliminary injunction, later to be made permanent, that enjoins the utilization of a definition of hemp or hemp products that conflicts with the Agriculture Improvement Act of 2018, and the balance of the harms weighs in favor of Plaintiff;

E. Award Plaintiff his costs and attorney's fees incurred in bringing this action; and,

F.  Award Plaintiff all other just and proper relief.

Respectfully submitted by,

*Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C.*

/s/ Tai J. Vokins
Tai J. Vokins,  #23707
831 Massachusetts, Suite B
PO Box 766
Lawrence, KS 66044
Tel. 785.842.6311
Fax 785.842.6312
tvokins@sloanlawfirm.com
Attorneys for Plaintiff