IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Murray Dines, d/b/a Terpene Distribution,

Plaintiff,

v.

Laura Kelly, in her official capacity as Governor of the State of Kansas, and Derek Schmidt, in his official capacity as Attorney General of the State of Kansas,

Defendants.

Case No. 2:22-CV-02248-KHV-GEB

# Memorandum in Support of Motion to Dismiss or Stay

## Nature of Case

This is a 42 U.S.C. § 1983 case. Dkt. Doc. 7 ("Am Cmplt"), ¶ 12.

Plaintiff Murray Dines plans to sell "hemp products"[1] that he purchases from Colorado at his retail store in Lawrence, Kansas (previously located in

[1] Defendants understand that these are allegedly hemp derived CBDs, *i.e.*, Cannabis-Derived Products.

Topeka). *Id.* at ¶¶ 4, 5, 13, 14. Some of these products, he says, contain Delta-8 tetrahydrocannabinol, aka, Delta-8 THC.[2] *Id.* at ¶ 13.

Plaintiff alleges his "hemp products" meet the definition in the federal Agriculture Improvement Act of 2018 ("2018 Farm Bill"), 132 Stat. 4905, § 10113, Subtitle G. Am Cmplt, ¶¶ 36-37. In particular, the act provides:

> In this subtitle:
>
> (1) HEMP.—The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol ["Delta-9 THC"] concentration of not more than 0.3 percent on a dry weight basis.

7 U.S.C. § 1639o.

In April of 2022, some of Plaintiff's products, at his former Topeka store, were seized by Shawnee County Sheriff and Topeka Police Department law enforcement under a search warrant. Am Cmplt, ¶¶ 57-61. Plaintiff alleges the products contained less than 0.3 percent Delta-9 THC,

---

[2] Plaintiff believes that he has found a loophole from federal law, which permits him to sell psychoactive drugs, because a federal definition of "hemp" mentions Delta-9 THC concentrations, but not Delta-8 THC. An FDA publication explains: "Delta-8 THC has psychoactive and intoxicating effects, similar to delta-9 THC (i.e., the component responsible for the 'high' people may experience from using cannabis)." 5 Things to Know about Delta-8 Tetrahydrocannabinol – Delta-8 THC at https://www.fda.gov/consumers/consumer-updates/5-things-know-about-delta-8-tetrahydrocannabinol-delta-8-thc (last visited July 7, 2022).

but law enforcement claimed they were unlawful schedule I drugs because of their Delta-8 THC content.[3] *Id.* at ¶¶ 62-63.

[3] The possession and sale of controlled substances are prohibited by Article 57 of Chapter 21 of the Kansas statutes. In Kansas, controlled substances include:

> (h) Any of the following cannabinoids, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:
>
> (1) Tetrahydrocannabinols – 7370
> Meaning tetrahydrocannabinols naturally contained in a plant of the genus Cannabis (cannabis plant), as well as synthetic equivalents of the substances contained in the plant, or in the resinous extractives of Cannabis, sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity such as the following:
>
> Delta 1 cis or trans tetrahydrocannabinol, and their optical isomers Delta 6 cis or trans tetrahydrocannabinol, and their optical isomers Delta 3,4 cis or trans tetrahydrocannabinol, and its optical isomers (Since nomenclature of these substances is not internationally standardized, compounds of these structures, regardless of numerical designation of atomic positions covered.), except tetrahydrocannabinols in any of the following:
>
> (A) Industrial hemp, as defined in K.S.A. 2021 Supp. 2-3901, and amendments thereto;
>
> (B) solid waste, as defined in K.S.A. 65-3402, and amendments thereto, and hazardous waste, as defined in K.S.A. 65-3430, and amendments thereto, if such waste is the result of the cultivation, production or processing of industrial hemp, as defined in K.S.A. 2021 Supp. 2-3901, and amendments thereto, and such waste contains a delta-9 tetrahydrocannabinol [continued next page]

Plaintiff seeks injunctive and declaratory relief. Am Cmplt, wherefore clause at p. 16. He claims that Kansas law enforcement threatens his prosecution for possession, distribution or sale of his products based on the AG's "faulty" interpretation of the referenced Kansas statutes.[4] *Id.* at ¶¶ 47-53. He asserts that, if the AG's interpretation is correct, the Kansas statutes that criminalize possession, distribution or sale of his products with Delta-8 THC are preempted by the 2018 Farm Bill under the Supremacy Clause of the United States Constitution. *Id.* at ¶¶ 65-69.

Plaintiff's lawsuit should be dismissed for failure to state a claim. The Supremacy Clause is not the source of any federal rights and does not create a cause of action. And there is no cause of action to support a 42 U.S.A. § 1983 claim in the 2018 Farm Bill. But, even if a plausible claim has

---

> concentration of not more than 0.3%; or
>
> (C) hemp products, as defined in K.S.A. 2021 Supp. 2-3901, and amendments thereto, unless otherwise deemed unlawful pursuant to K.S.A. 2021 Supp. 2-3908, and amendments thereto.

K.S.A. 2021 Supp. § 65-4105(h)(1). *See also* K.S.A. 2021 Supp. § 21-5701(a) (applying the "controlled substances" definitions in Article 41 of Chapter 65 to "crimes involving controlled substances in Article 57 of Chapter 21).

[4] *See* Kan. Atty. Gen. Op. No. 2021-4, 2021 WL 6013969.

been stated, the action should be stayed under the *Pullman* abstention doctrine.

## Argument

1. ***Dismissal is proper under Fed. R. Civ. P. Rule 12(b)(6) because Plaintiff had failed to state a claim upon which relief can be granted.***

There are two overarching elements of a § 1983 claim. The plaintiff must allege and ultimately prove both (1) a deprivation of a federal right, and (2) that the person who deprived the plaintiff of that right acted under color of state law. *West v. Atkins*, 487 U.S. 42, 49 (1988).

> [T]he Supremacy Clause is not the "'source of any federal rights,'" *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 [ ] (1989) (*quoting Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 613 [ ] (1979)), and certainly does not create a cause of action.

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015). Accordingly, the Supremacy Clause is not a federal right that may support a § 1983 claim. *E.g., Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 900-906 (10th Cir. 2017) (finding no cause of action for injunction or declaratory judgment based on Supremacy Clause or in equity without an underlying

substantive federal right).[5]

Furthermore, the 2018 Farm Bill is not a source of a private federal right that may support a § 1983 claim. "[Section] 1983 does not provide an avenue for relief every time a state actor violates a federal law." *Vega v. Tekoh*, No. 21-499, 2022 WL 2251304, at *9, n. 6 (U.S. June 23, 2022) (*quoting Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005)). For the federal statutes, "to seek redress through § 1983, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal law." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis original). *See also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) ("[W]hether a statutory violation may be enforced through § 1983 is a different inquiry than that involved in determining whether a private right of action can be implied from a particular statute ... [b]ut the inquiries overlap in one meaningful respect-in either case [the court] must first determine whether Congress intended to create a federal right."); *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009) (same).

---

[5] The Tenth Circuit's decision in *Hickenlooper* conclusively establishes dismissal is required as to Count I (federal preemption) and as to Counts II and III (injunctive relief and declaratory judgment, respectively), of the Amended Complaint, if read literally. However, defendants assume that the pleading's references to the 2018 Farm Bill are intended to assert a violation of that federal law supports Plaintiff's claims for equitable relief under § 1983.

In making this determination, a plaintiff asserting such a right must identify the claimed statutory right with particularity, *Blessing*, 520 U.S. at 340-41; *Johnson v. Domestic Rels. Sec.*, No. 18-1294, 2019 WL 1915563, at *3 (D. Kan. Apr. 30, 2019), and the Court should examine the following three factors:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Hobbs,* at 1179 (quoting Bless, but quotations marks omitted). "A statute embodies congressional intent to benefit the plaintiff only if it is phrased in terms of the person benefited." *Id.* (quotation omitted).

Some courts had interpreted the first factor as allowing plaintiffs to enforce a statute under §1983 so long as the plaintiff fell within the general zone of interest that the statute intended to protect; which is something less than what is required for a statute to create rights enforceable directly from the statute itself under an implied right of action. *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). But the Supreme Court rejected the notion that *Blessing* "permit[s] anything short of an unambiguously conferred right to support a cause of action brought under § 1983." Specifically, *Gonzaga*

stated that for a statute to confer a private right of action, the statutory language must be "'phrased in terms of the persons benefited.'" *Id.* at 284.

Federal law defines marijuana as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin." 21 U.S.C. § 802(16)(A). Hemp or industrial hemp is defined as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [('THC')] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. §§ 1639o(1), 5940(a)(2); see 21 U.S.C. § 802(16)(B)(i). Marijuana and any part of the plant Cannabis sativa L. with a THC concentration above 0.3 percent are Schedule I controlled substances. 21 U.S.C. § 812, Schedule I, (c)(10), (17).

In 2014, the Agricultural Act of 2014 ("2014 Farm Bill") was signed into law and contained a provision entitled "Legitimacy of Industrial Hemp Research." *See* Pub Law 113-79, 128 Stat. 912, § 7606 (Feb. 7, 2014) (codified at 7 U.S.C. § 5940). According to a "Statement of Principles" published jointly in the Federal Register by the U.S. Department of

Agriculture, the Drug Enforcement Administration, and the Food and Drug Administration, that provision of the 2014 Farm Bill:

> legalized the growing and cultivating of industrial hemp for research purposes in States where such growth and cultivation is legal under State law, notwithstanding existing Federal statutes that would otherwise criminalize such conduct. The statutorily sanctioned conduct, however, was limited to growth and cultivation by an institution of higher education or State department of agriculture for purposes of agricultural or other academic research or under the auspices of a State agricultural pilot program for the growth, cultivation, or marketing of industrial hemp.
>
> Section 7606 authorized State departments of agriculture to promulgate regulations to carry out these pilot programs but did not provide a specific delegation to the U.S. Department of Agriculture (USDA) or any other agency to implement the program. As well, the statute left open many questions regarding the continuing application of Federal drug control statutes to the growth, cultivation, manufacture, and distribution of industrial hemp products, as well as the extent to which growth by private parties and sale of industrial hemp products are permissible. Section 7606 did not remove industrial hemp from the controlled substances list. Therefore, Federal law continues to restrict hemp-related activities, to the extent that those activities have not been legalized under section 7606.

81 Fed. Reg. 53,395 (Aug. 12, 2016).[6]

[6] More specifically, the 2014 Farm Bill permitted an "institution of higher education" or a "State department of agriculture" to "grow or cultivate industrial hemp if": (1) the industrial hemp is grown or cultivated for purposes of research conducted under an agricultural pilot program or other agricultural or academic research; and (2) the growing or cultivating of industrial hemp is allowed under the laws of the State in which such institution of higher education or State department of agriculture is located and such research occurs. 7 U.S.C § 5940(b).

Subsequently, the 2018 Farm Bill was signed into law, which, in part, amended the Controlled Substances Act to remove hemp and hemp-derived products from the definition of marijuana. Pub. Law 115-334, Title X, § 12619 (Dec. 20, 2018); *see also* 7 U.S.C. § 1639o(1); 21 U.S.C. § 802(16)(B)(i). The law requires the USDA to promulgate regulations and guidelines to administer a program for hemp production. Hemp production may be administered directly by the USDA or by a state or Indian tribe that has a USDA-approved plan. 7 U.S.C. §§ 1639p, 1639q. When a state does not have a USDA-approved plan to regulate the production of hemp, "it shall be unlawful to produce hemp in that State ... without a license issued by the Secretary [of the USDA] under subsection (b) [of § 1639q]." 7 U.S.C. § 1639q(c)(1). State approved plans may include more "stringent" regulations than those set out in federal regulations. *See* 7 U.S.C.A. § 1639p ("Nothing in this subsection preempts or limits any law of a State or Indian tribe that--(i) regulates the production of hemp; and (ii) is more stringent than this subchapter").

However, while Plaintiff does not identify the specific federal provision that he claims is violated, there is no directive in the 2018 Farm Bill that

unambiguously confers a private right to individuals.[7] To the contrary, the Bill's provisions describe the powers and methods reserved to the Secretary for enforcement and regulation of state, Indian, or Department of Agriculture plans for production of hemp. Such a delegation of authority is evidence that no private right of action was intended. *Freier v. Colorado*, 804 F. App'x 890, 891-92 (10th Cir. 2020) (unpublished) ("Those courts have reasoned that Congress, by delegating enforcement authority to the Secretary of Health and Human Services, did not intend for HIPAA to include or create a private remedy") (citation omitted).

An enforceable private right exists only if the statute contains nothing "short of an unambiguously conferred right" and not merely a vague benefit or interest. *Gonzaga Univ.*, 536 U.S. at 283 (statutory provisions relied on by Plaintiff "fail to confer enforceable rights" under § 1983 because they "entirely lack the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights," *id.* at 287). No enforceable right exists "where a statute by its terms grants no private rights to any identifiable class." *Id.* at 283-84. "Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under

[7] Discussion of the second and third factors listed in *Hobbs* is problematic without a specific identification of the provisions in the 2018 Farm Bill which Plaintiff claims support a private right when violated. However, the first factor is controlling in this case.

the authority of [Section 1983]." *Bernard v. Kansas Health Pol'y Auth.*, No. 09-1247, 2011 WL 768145, at *7 (D. Kan. Feb. 28, 2011) (*quoting Gonzaga Univ.*, 536 U.S. at 283, with its emphasis).

Moreover, it is well accepted that Section 1983 does not allow an individual to pursue a violation of federal criminal law. *Lynch v. Bulman*, 2007 WL 2993612, at *2 (10th Cir. 2007) (unpublished) (*citing Newcomb v. Ingle*, 827 F.2d 675, 676, n.1] (10th Cir. 1987), and two unpublished Tenth Circuit opinions). It makes little sense that a private right is granted by the 2018 Farm Bill that mostly, if not entirely, operates to redefine the criminality of marijuana.

That the required Congressional intent to create a private right is absent is not altered by Section 10114 of Pub. Laws 115-334. That section states:

> (a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

Pub. Law 115-334, Title X, § 10114. The section is not codified, but is an appended note to 7 U.S.C. § 1639o. The section is directed to governments, not at granting rights to a class of individuals. *See Serna v. Denver Police Dep't,* No. 21-CV-00789-WJM-MEH, 2021 WL 6503753, at *5 (D. Colo. June 9, 2021)*, report and recommendation adopted,* No. 21-CV-0789-WJM-MEH, 2021 WL 5768993 (D. Colo. Dec. 6, 2021) (finds that Congress did not intend for the 2018 Farm Bill to provide a private right of action).[8]

Finally, Congress specifically contemplated a private right of action and rejected it. The Conference Report for the legislation notes that the House version of the bill proposed a private right of action to challenge state regulation of interstate commerce. H.R. Conf. Rep. 115-1072, at 794.[9] The Senate version did not contain that provision. *Id.* In resolving this difference, "[t]he Conference substitute does not adopt the House provision." *Id.* (emphasis added). This Court should not "supply by construction what Congress has clearly shown its intention to omit*." Carey v. Donohue*, 240 U.S. 430, 437 (1916).

---

[8] This is the only case we could find that directly addressed an alleged private right under the 2018 Farm Bill.

[9] Available online at https://www.govinfo.gov/content/pkg/CRPT-115hrpt1072/pdf/CRPT-115hrpt1072.pdf (last visited July 7, 2022).

2. ***This action should be stayed under the Pullman abstention doctrine if Plaintiff has succeeded in stating a claim.***

Plaintiff reasonably alleges that he has been threatened with prosecution, under Kansas statutes, for his possession and sale of products with Delta-8 THC. *Cf.* Am Cmplt, ¶¶ 51-53. Assuming Plaintiff has alleged a plausible claim that a federal court has jurisdiction to decide, this action should be stayed to allow the anticipated state prosecution to proceed.[10] *Pullman* abstention is appropriate.

> The *Pullman* doctrine is a "narrow exception" to the federal courts' general duty to decide cases and "is used only in exceptional circumstances." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008) (citation omitted). The policy underlying *Pullman* abstention is that federal courts should avoid "premature constitutional adjudication," *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 306 [ ] (1979) (citation omitted), and the risk of rendering advisory opinions, *Moore v. Sims*, 442 U.S. 415, 428[ ] (1979) ("[T]he *Pullman* concern [is] that a federal court will be forced to interpret state law without the benefit of state-court consideration and ... render[ ] the federal-court decision advisory and the litigation underlying it meaningless.") (citation omitted). *Pullman* avoids "federal-court error in deciding state-law questions antecedent to federal constitutional issues," by allowing for parties to adjudicate disputes involving "unsettled state-law issues" in state courts. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 [ ] (1997).

---

[10] *Younger* abstention, which would otherwise be required, is not applicable because a parallel state criminal proceeding is not yet pending. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

*Caldara v. City of Boulder*, 955 F.3d 1175, 1178 (10th Cir. 2020), *cert. denied sub nom. Caldara v. City of Boulder, Colorado*, 141 S. Ct. 849, 208 L. Ed. 2d 424 (2020). *Pullman* abstention is the postponement of jurisdiction, not its abdication; When applicable, the federal proceedings are stayed. *See Am. Const. L. Found., Inc. v. Meyer*, 113 F.3d 1245 (10th Cir. 1997).

Courts list three requirements to abstention under *Pullman*:

> (1) an uncertain issue of state law underlies the federal constitutional claim; (2) the state issues are amenable to interpretation and such an interpretation obviates the need for or substantially narrows the scope of the constitutional claim; and (3) an incorrect decision of state law by the district court would hinder important state law policies.

*Caldara,* 955 F.3d at 1179.

Integral to his claim, Plaintiff wants the Court to first interpret Kansas statutes. *E.g.*, Am Cmplt ¶ 3 ("This lawsuit also challenges Kansas' law enforcement authority … to enact prosecution policies that are contrary to Kansas and federal laws"). The Court would reach the constitutional issue under the Supremacy Clause only if it finds, as the AG opined, that

> Delta-8 THC comes within the definition of a Schedule I controlled substance and is unlawful to possess or sell in Kansas unless it is made from industrial hemp and is contained in a lawful hemp product having no more than 0.3% total tetrahydrocannabinols (THC). Unlawful hemp products include cigarettes, cigars, teas, and substances for use in vaping devices. Delta-8 THC derived from any source other than

> industrial hemp is a Schedule I controlled substance and unlawful to possess or sell in Kansas. Other federal and state laws and regulations place additional limits on the legality of products containing THC and other cannabinoids

2021 WL 6013969, *4. But Plaintiff says possession and sale of hemp derived products with any amount of Delta-8 is not illegal under Kanas statutes, if properly interpreted, even without application of federal preemption rules. Am Cmplt ¶¶ 48b & 48c.

The Kansas statutes in play have not been interpreted by Kansas courts. There is no theoretical conflict with the 2018 Farm Bill, if Plaintiff's interpretation of the statutes is accepted. No federal constitutional issue or claim would be reached. Plaintiff can present his reading of the Kansas statutes in his defense at a state prosecution [and also his preemption claim if he has misunderstood the Kansas statutes]. And Kansas has an important interest in prosecuting violations of its criminal statutes which is subject to interference if the unsettled state law is interpreted by a federal court.

Certification of state law questions to the Kansas Supreme Court[11] can be a viable alternative to the use of *Pullman* abstention. *See Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008). Yet, in this case, there are at least two reasons abstention is the better alternative if

[11] K.S.A. § 60-3201.

Plaintiff has stated a claim. First, threshold issues of proof in a criminal prosecution will be resolved in a state district court proceeding, which cannot be reached by the Kansas Supreme Court (or even this Court). Do Plaintiff's hemp products have a Delta-9 THC concentration of not more than 0.3 percent on a dry weight basis? On the other end of the spectrum, will law enforcement's tests show Plaintiff's products have Delta-8 concentrations of not more than 0.3 percent? Second, if state prosecution is initiated, dismissal of this case under *Younger* abstention is required and appropriate for all of the reasons that justify the *Younger* abstention doctrine.

## Conclusion

Therefore, the Defendants request that the Court enter an order dismissing this case or, alternatively, staying the proceedings under the *Pullman* doctrine.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT
s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-6244
Fax: (785) 291-3767
Email: art.chalmers@ag.ks.gov
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on July 8, 2022, a copy of the foregoing Memorandum in Support of Motion to Dismiss or Stay was filed and served via the Court's electronic filing system on all counsel of record.

s/ Arthur S. Chalmers