IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MURRAY DINES, d/b/a Terpene Distribution,        )<br>)<br>Plaintiff,        )<br>)<br>v.        )<br>)<br>LAURA KELLY, in her official capacity        )<br>as Governor of the State of Kansas        )<br>)<br>and,        )<br>)<br>DEREK SCHMIDT, in his official capacity        )<br>as Attorney General of the State of Kansas,        )<br>)<br>Defendants.        )<br>_____)  | CIVIL ACTION<br><br>No. 2:22-cv-02248-KHV-GEB |

### MEMORANDUM AND ORDER

Murray Dines has filed suit against the Governor and the Attorney General of the State of Kansas in their official capacities. Pursuant to 42 U.S.C. § 1983, plaintiff alleges that defendants are violating federal laws which regulate hemp production and seeks injunctive and declaratory relief. First Amended Complaint For Injunctive And Declaratory Relief (Doc. #7) filed July 7, 2022 at 2. Specifically, plaintiff asks the Court to declare that federal law preempts portions of the Kansas Commercial Industrial Hemp Act ("Kansas Hemp Act"), K.S.A. § 2-3901 et seq., and the Kansas Controlled Substance Act, K.S.A. § 65-4101 et seq., which purport to criminalize the sale and possession of certain hemp products. Id. This matter is before the Court on defendants' Motion To Dismiss Or Stay (Doc. #11) filed July 8, 2022 and defendants' Motion To Dismiss Governor Kelly (Doc. #10) filed July 8, 2022. For reasons stated below, the Court sustains defendants' motion to dismiss and overrules defendants' motion to dismiss Governor Kelly.

**Legal Standards**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id. at 678. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. However, plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent with" liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

**Factual Background**

Except where otherwise noted, plaintiff's amended complaint alleges as follows:

The 2014 And 2018 Farm Acts

The cannabis plant is an easily cultivated plant commonly referred to as hemp or marijuana, depending on the cultivation method. The cannabis plant produces at least 113 cannabinoids, one of which is tetrahydrocannabinol ("THC"). THC comes in multiple isomeric forms, including delta-9 and delta-8. Hemp and marijuana are distinct plants, and hemp differs from conventional marijuana because it has a lower concentration of delta-9 THC, the principal psychoactive constituent of cannabis.

Until recently, federal law prohibited the growth and cultivation of hemp. In 2014, however, President Barack Obama signed into law the Agricultural Act of 2014 ("2014 Farm Act"), which allowed states and research institutions to cultivate industrial hemp for research purposes without approval from the Drug Enforcement Administration. Pub L. No. 113-79, § 7606. The 2014 Farm Act defined "industrial hemp" as the plant "Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 [per cent] on a dry weight basis." 7 U.S.C. § 5940(a)(2).

In 2018, President Donald Trump signed a new farm bill—the Agriculture Improvement Act of 2018 ("2018 Farm Act")—which repealed and replaced the 2014 Farm Act. Subtitle G of the 2018 Farm Act permits and regulates hemp production by licensed hemp producers. Subtitle G is well summarized in Serna v. Denver Police Department, No. 21-cv-0789-WJM-MEH, 2021 WL 6503753 (D. Colo. June 9, 2021), as follows:

> Subtitle G provides a framework by which the United States Department of Agriculture must create and administer a program regarding the production of hemp. It begins with a definition of "hemp" as "the plant Cannabis sativa L. and any part of that plant . . . with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1). Any state or Indian tribe that wants "primary regulatory authority over the production of hemp in the State or territory of the Indian tribe," must provide to the Secretary of Agriculture ("Secretary") "a plan under which the State or Indian tribe monitors and regulates that production." 7 U.S.C. § 1639p(a)(1). The statute describes the requirements of such a plan. Id. § 1639p(a)(2). The Secretary has the authority to

approve or disapprove any plan in consultation with the Attorney General of the United States. Id. § 1639p(b). Also, the Secretary has the authority to conduct an audit of any state or Indian tribe to determine compliance with an approved plan. Id. § 1639p(c). If the Secretary determines that a state or Indian tribe is not in compliance, the Secretary may either work with the non-complying state or Indian tribe to develop a corrective action plan (if it is the first instance of non-compliance) or revoke the prior approval of the plan. Id. § 1639p(c)(2). Any violation of an approved plan is "subject to enforcement solely in accordance with" subsection (e). Id. § 1639p(e)(1).

Depending on the type of violation, the statute bestows the authority on the Secretary to issue corrective action plans (for a non-repeating, negligent violation, id. § 1639p(e)(2)) and to report the state's department of agriculture or tribal government to the Attorney General and chief law enforcement officer of the state or Indian tribe (for violations with a culpable mental state greater than negligence, id. § 1639p(e)(3)(A)).

To the extent a state or tribal plan is not approved, the Secretary establishes a plan for the production of hemp in that state or territory. Id. § 1639q(a)(1). As part of this authority, the Secretary determines the procedures for the licensing of hemp producers. Id. § 1639q(b). The statute makes it unlawful to produce hemp "[i]n the case of a State or Indian tribe for which a State or Tribal plan is not approved," and enforcement authority for violations of the plans is reserved to the Secretary. Id. § 1639q(c).

Finally, appended as a note to 7 U.S.C. § 1639o is Section 10114 concerning interstate commerce. That Section states:

(a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

Pub. L. 115-334, Title X, § 10114 (Dec. 20, 2018) (appended as a note to 7 U.S.C. § 1639o).

Serna, 2021 WL 6503753, at *3–4.

Plaintiff alleges that Subtitle G legalizes hemp products—regardless of delta-8 THC

-4-

concentration—as long as any delta-9 THC concentration does not exceed 0.3 per cent.  He bases this argument on the fact that the 2018 Farm Act expanded the definition of industrial hemp to include not just plants and parts of plants, but "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" with not more than 0.3 per cent delta-9 THC concentration.  7 U.S.C. § 1639o(1).

Plaintiff also relies on Section 12619 of the 2018 Farm Act, which amended the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 et seq., in two ways: (1) the CSA definition of marijuana (spelled "marihuana") now excludes hemp; and (2) the CSA definition of THC now excludes all THC forms found in hemp.  21 U.S.C. § 812(c)(17).   Plaintiff therefore reasons that with the passage of the 2018 Farm Act, federal law no longer restricts the possession and sale of hemp and Kansas cannot declare otherwise.

<u>Kansas Hemp Law and Attorney General Opinion</u>

Kansas regulates hemp and hemp products through the Kansas Hemp Act, K.S.A. § 2-3901 et seq., and the Kansas CSA, K.S.A. § 65-4101 et seq.  Generally, the Kansas Hemp Act authorizes the Kansas Department of Agriculture to develop a plan to regulate hemp production.  Specifically, the Act addresses (1) licensing requirements for producers; (2) recordkeeping requirements for maintaining information about the land where hemp is produced; (3) procedures for testing THC concentration levels for hemp; (4) procedures for disposing of non-compliant hemp plants; (5) compliance provisions; and (6) procedures for handling violations.  K.S.A. § 2-3901 et seq.  The Kansas Hemp Act requires that law enforcement officials implement it in the least restrictive manner permissible under federal law.  K.S.A. § 2-3905(a).

The Kansas Hemp Act defines hemp as the plant "Cannabis sativa L. and any part of such plant, whether growing or not, with a delta-9 [THC] concentration of not more than 0.3 [per cent]

on a dry weight basis." K.S.A. § 2-3901(7). This definition is identical to the definition in the 2014 Farm Act and does not include derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers of the cannabis plant. The Kansas Hemp Act states that "final hemp products" may not contain a THC concentration of more than 0.3 per cent, but does not distinguish between delta-9 and other isomeric forms of THC. K.S.A. § 2-3901(4).

Kansas has a federally approved regulatory plan that includes the Kansas Hemp Act.[1] This plan includes rules and regulations which the Kansas Department of Agriculture has adopted for hemp production. The plan follows the Kansas Hemp Act and offers more detail regarding regulatory mechanics such as licensing, testing and disposal.

Section 2-3908 of the Kansas Hemp Act states that "nothing in this section shall prohibit . . . the production, use or sale of any hemp product that is otherwise not prohibited by state or federal law."

The Kansas CSA regulates the manufacture, importation, exportation, possession, use and distribution of certain substances in Kansas. Section 65-4105(h)(1) of the Kansas CSA classifies THCs (including delta-8 and delta-9 THC and their derivatives) as schedule I drugs[2] but explicitly excludes hemp and hemp products from the definition of THC unless such hemp products are otherwise unlawful pursuant to Section 2-3908 in the Kansas Hemp Act. Because the Kansas

---

[1] The Secretary of Agriculture approved Kansas' hemp plan, including the Kansas Hemp Act statutory scheme, in 2020. See Status of State and Tribal Hemp Production Plans for USDA Approval, USDA, https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review (last updated Sep. 27, 2022) (Kansas Hemp Act approved 2020).

[2] Under Kansas law, a person must register with the Kansas Board of Pharmacy to manufacture, dispense or distribute schedule I drugs. K.S.A. § 65-4117. Only registered persons and their agents, in certain circumstances, may use or possess controlled substances. K.S.A. § 65-4116. Any person who violates the Kansas CSA is guilty of a class A nonperson misdemeanor. K.S.A. § 65-4127c.

Hemp Act excludes products with a THC concentration of more than 0.3 per cent from its definition of "hemp products"—but does not distinguish between delta-9 and other isomeric forms of THC—Kirk D. Thompson, Director of the Kansas Bureau of Investigation ("KBI") asked Attorney General Schmidt the following questions: (1) are products containing delta-8 THC or its optical isomers legal in Kansas; and (2) if so, is there a statutorily-prescribed limit to the amount of delta-8 THC or its optical isomers such products may contain?

On December 2, 2021, Attorney General Derek Schmidt responded to Director Thompson. In his opinion letter, Attorney General Schmidt stated that the Kansas Hemp Act and the Kansas CSA prohibit the sale and possession of hemp products with THC concentrations greater than 0.3 per cent, not just delta-9 concentrations which exceed that limit.

Plaintiff alleges that Attorney General Schmidt's opinion is faulty for the following reasons: (1) while the 2018 Farm Act prohibits a state from altering the definition of hemp, Kansas impermissibly maintains the definition from the 2014 Farm Act;[3] (2) its conclusion is inconsistent with the Kansas Hemp Act's direction that law enforcement officials implement it in the least restrictive manner permissible under federal law; and (3) it omits discussion of Section 2-3908(d) of the Kansas Hemp Act, which permits the production, use and sale of hemp products which do not contain delta-9 THC concentrations of more than 0.3 per cent.

Current Litigation

---

[3] Plaintiff alleges that the 2018 Farm Act prohibits the states from altering the definition of hemp. Plaintiff relies on the Conference Report for the 2018 Farm Act. Excerpt from Conference Report (Doc. #7-1) filed July 7, 2022 at 737. In this report, the Managers explained that they "intend to authorize states . . . to submit a state plan to the Secretary [of Agriculture] for approval to have primary regulatory authority over the growing and production of hemp." Id. The Managers, however, "do not intend to limit what states . . . include in their . . . plan, as long as it is consistent with" Subtitle G of the 2018 Farm Act. Id. The Mangers then offer the example that states may "put more restrictive parameters on the production of hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive than" Subtitle G. Id.

Plaintiff sells hemp and hemp products from his retail store in Lawrence, Kansas. Some of plaintiff's products contain delta-8 THC, but none contain a delta-9 THC concentration of more than 0.3 per cent.

On April 20, 2022, members of the Topeka Police Department narcotics unit and Shawnee County Drug Task Force executed two search warrants at plaintiff's store in Topeka, Kansas. According to the warrant affidavits, an officer had obtained plaintiff's products through an undercover sale and sent them to the KBI lab, which concluded that "tetrahydrocannabinol (THC) was detected."  The warrant affidavit did not specify the type, isomer(s) or percentage concentration of THC.

During the raid, Topeka Police Officers damaged plaintiff's property and seized over $120,000.00 of property, including cash, containers, general supplies, hemp, hemp derivatives and hemp products. Plaintiff only had products derived from hemp and none of them contained a delta-9 THC concentration of more than 0.3 per cent.

On April 28, 2022, the Shawnee County Sheriff issued a news release, citing the Attorney General's opinion, claiming that the products at plaintiff's store were "unlawful schedule I drugs." On June 24, 2022, plaintiff filed this action against defendants.

## Analysis

**I.    Deprivation Of Rights Claims Under 42 U.S.C. § 1983**

Plaintiff alleges that defendants have violated the 2018 Farm Act and the Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3.  Specifically, plaintiff argues that under the 2018 Farm Act, (1) defendants incorrectly read the Kansas Hemp Act to criminalize hemp products with more than 0.3 per cent of any type of THC concentration and (2) in the alternative, the Kansas Hemp Act impermissibly criminalizes such hemp products in violation of

the 2018 Farm Act and the Supremacy Clause of the United States Constitution. Plaintiff also alleges that defendants have violated the Commerce Clause by applying Kansas law in a manner that criminalizes hemp products which are legal under the 2018 Farm Act. First Amended Complaint For Injunctive And Declaratory Relief (Doc. #7) filed July 7, 2022 at 13. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983.

In relevant part, defendants argue that the Court should dismiss plaintiff's claims because the 2018 Farm Act does not support a cause of action under Section 1983.[4]

Section 1983 holds liable every person "who, under color of any statute, ordinance regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, [another person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). To state a claim under Section 1983, plaintiff must allege both that (1) defendants deprived him of a right secured by the Constitution or the laws of the United States and (2) defendants acted under color of law. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

---

[4] In filing their Motion To Dismiss Or Stay (Doc. #11) filed July 8, 2022, defendants "overlooked" plaintiff's Commerce Clause claim under Section 1983, and did not seek to dismiss it. Plaintiff's Response In Opposition To Defendant's Motion To Dismiss Or Stay (Doc. #16) filed August 15, 2022 only made passing reference to the Commerce Clause. Specifically, plaintiff argued that even if the Supremacy Clause and the 2018 Farm Act did not create enforceable private rights, his case should not be dismissed because his Commerce Clause claim was actionable under Section 1983 and defendants did not seek to dismiss. Id. at 13–14 (three-paragraph comment). In their reply brief, defendants first argued that plaintiff had not alleged a plausible Commerce Clause claim. Reply In Support Of Motion To Dismiss Or Stay (Doc. #17) filed August 24, 2022 at 8.

The Court will not consider arguments first raised in reply briefs. See Mondaine v. Am. Drug Stores, Inc., 408 F. Supp. 2d 1169, 1202–03 (D. Kan. 2006); Black & Veatch Corp. v. Aspen Ins. (UK) Ltd., No. CV 12-2350-KHV, 2019 WL 4958211, at *1 (D. Kan. Oct. 7, 2019) ("Court will not consider arguments and authorities which defendants first raise in their reply brief."); Mike v. Dymon, Inc., No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (in fairness and to ensure proper notice, court generally summarily denies or excludes all arguments and issues first raised in reply briefs).

### A.    Private Right Under 2018 Farm Act

To establish that defendants deprived him of a right secured by the laws of the United States, plaintiff must first show that the 2018 Farm Act conferred on him a private right under federal law. Plaintiff alleges that the 2018 Farm Act gave him the right to produce, possess, travel with and sell hemp and hemp products. Plaintiff admits that hemp *production* is subject to state regulation with the approval of the Secretary of Agriculture, and that Kansas has a federally approved regulatory plan which includes the Kansas Hemp Act. Plaintiff argues that Kansas, however, cannot regulate his right to possess, travel with and sell hemp and hemp products because the 2018 Farm Act authorizes such conduct and preempts any state regulation to the contrary. Defendants argue that the 2018 Farm Act confers no such right and that plaintiff cannot allege a Section 1983 cause of action under the 2018 Farm Act.

"Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." Alexander v. Sandoval, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." Id. "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." CNSP, Inc. v. City of Santa Fe, 755 F. App'x 845, 848 (10th Cir. 2019).

In Blessing v. Freestone, 520 U.S. 329, 340 (1997), the Supreme Court held that a plaintiff seeking Section 1983 redress "must assert the violation of a federal right, not merely a federal law." (emphasis in original). To establish such a right, (1) Congress must have intended that the statute benefit plaintiff; (2) plaintiff must establish that the right assertedly protected "is not so vague and amorphous that its enforcement would strain judicial competence;" and (3) the right-

creating statute must be "couched in mandatory, rather than precatory, terms." Id. at 340–41 (internal quotations omitted). If so, the asserted private right is presumptively enforceable under Section 1983. Id. at 284. Defendants can rebut this presumption by showing that Congress expressly or impliedly foreclosed private enforcement. Planned Parenthood of Kan. v. Andersen, 882 F.3d 1205, 1225 (10th Cir. 2018) (citing Gonzaga Univ., 536 U.S. at 284 & n.4).

Under the first Blessing factor, the statute must create an individual right through its "unmistakable focus on the benefited class." Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1148 (10th Cir. 2009) (quoting Gonzaga, 536 U.S. at 284). Defendant correctly argues that plaintiff does not identify a particular statute which gives him or any other identifiable class the right to possess and sell hemp products that the 2018 Farm Act has decriminalized. Indeed, in arguing that he has a right to possess and sell certain hemp products, plaintiff relies on the framework of the 2018 Farm Act. Nothing in the framework of Subtitle G, however, indicates any legislative intent to create a private right of action. To the contrary, the 2018 Farm Act focuses on power and methods reserved to the Secretary of Agriculture for enforcement and regulation of state, Indian and Department of Agriculture plans for production of hemp. The Court agrees with the Honorable William J. Martinez, who in Serna succinctly reasoned as follows:

> Such a delegation of authority is evidence that no private right of action was intended. Freier v. Colorado, 804 F. App'x 890, 891–92 (10th Cir. 2020) ("Those courts have reasoned that Congress, by delegating enforcement authority to the Secretary of Health and Human Services, did not intend for HIPAA to include or create a private remedy.") (citation omitted). Moreover, the Court does not perceive any "rights-creating language" in Subtitle G or Section 10114; that is, the statute does not contain language "which 'explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff' . . . and language identifying 'the class for whose *especial* benefit the statue was enacted.'" Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004) (internal citations omitted) (emphasis in original). Rather, these sections of the 2018 Farm Bill focus exclusively on the Department of Agriculture and the states and Indian tribes it will regulate. The lack of focus on any individuals is more evidence that there is no congressional intent to create a private right of action. Alexander v. Sandoval, 532 U.S. 275, 289 (2001)

> (finding that section of a statute that focused not "on the individuals protected[,] . . . but on the agencies that will do the regulating" did not create a private right of action). * * *
>
> Even if the Court believed that the text and structure of the 2018 Farm Bill was inadequate to conclusively state that Congress did not intend for a private right of action, see Landegger [v. Cohen, 5 F. Supp. 3d 1278, 1289 (D. Colo. 2013)] ("[c]ontext may only buttress a 'conclusion independently supported by the text of the statute' "), the context cited by Plaintiff puts any question of a right of action to rest. Plaintiff cites to the bill's legislative history. Resp. at 9–10. The Conference Report for the legislation notes that the House version of the bill proposed a private right of action to challenge state regulation of interstate commerce. H.R. CONF. REP. 115-1072, at 794. The Senate version did not contain that provision. Id. In resolving this difference, "[t]he Conference substitute *does not* adopt the House provision." Id. (emphasis added). As such, Congress specifically contemplated a private right of action and rejected it. The Court cannot "supply by construction what Congress has clearly shown its intention to omit." Carey v. Donohue, 240 U.S. 430, 437 (1916).

Serna, 2021 WL 6503753, at *4–5; See Safe Streets All. v. Hickenlooper, 859 F.3d 865, 903 (10th Cir. 2017) (citing Alexander v. Sandoval, 532 U.S. 275, 289 (2001) (statutes that focus on person regulated create no implication of intent to confer rights on particular class of persons)).

Section 12619 of the 2018 Farm Act, which removed hemp from the federal CSA, also does not create a private right for plaintiff. Although plaintiff argues that this section satisfies the first Blessing factor because it allows him to possess and sell hemp and hemp products, nothing in Section 12619 demonstrates an unmistakable focus on possessors or sellers of hemp. See 21 U.S.C. § 812(c) (hemp, as defined in 2018 Farm Act, removed from CSA). Instead, in accordance with the goals of the 2014 and 2018 Farm Acts, Section 12619 removes hemp from the CSA to facilitate state and federal regulation of hemp production.

In short, no part of the 2018 Farm Act demonstrates an unmistakable focus to benefit plaintiff or other unlicensed possessors and sellers of hemp products. The 2018 Farm Act does not create a private right for plaintiff to possesses and sell hemp and hemp products, either under

Section 1983 or as an implied cause of action under the 2018 Farm Act itself.  See Hobbs, 579 F.3d at 1183 ("Because the [proposed rights-creating] provisions [in the Medicaid Act] are not phrased in terms of Medicaid applicants, we cannot infer that Congress created private rights enforceable under § 1983 when it passed the . . . provisions.").  Accordingly, the Court sustains defendants' motion to dismiss plaintiff's first claim.  See Safe Streets All., 859 F.3d at 903 (where federal statute simply does not create substantive rights, not necessary to address remaining issues about private citizen's ability to enforce statute or obtain relief).

## II.    Governor Is A Proper Party

Defendants assert that the Governor is not a proper defendant because she has no specific statutory or constitutional duty to enforce the challenged Kansas statutes.  In Petrella v. Brownback, 697 F.3d 1285, 1293–94 (10th Cir. 2012), however, the Tenth Circuit held that in suits for prospective relief under Kansas law, the Governor is a proper party.  Specifically, the Tenth Circuit stated as follows:

> It cannot seriously be disputed that the proper vehicle for challenging the constitutionality of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute.  See Ex parte Young, 209 U.S. 123, 161 (1908).  Nor can it be disputed that the Governor and Attorney General of the state of Kansas have responsibility for the enforcement of the laws of the state.  See Kan. Const. Art. I § 3; Kan. Stat. Ann. § 75-702.

Petrella, 697 F.3d at 1293-94.  The Court therefore finds that the Governor is a proper defendant in this case and denies defendants' motion to dismiss Governor Kelly.

**IT IS THERFORE ORDERED** defendants' Motion To Dismiss Or Stay (Doc. #11) filed July 8, 2022 is **SUSTAINED**.  Plaintiff has no private right of action to enforce the 2018 Farm Act under 41 U.S.C. § 1983, and such claims are hereby dismissed under Rule 12(b)(6), Fed. R. Civ. P.

-14-

**IT IS HEREBY FURTHER ORDERED** that defendants' Motion To Dismiss Governor Kelly (Doc. #10) filed July 8, 2022 is **OVERRULED**.

Dated this 8th day of November, 2022 at Kansas City, Kansas.

                                                      s/ Kathryn H. Vratil
                                                     KATHRYN H. VRATIL
                                                     United States District Judge